# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE T. M.,[1] <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Deputy Commissioner of Operations of Social Security, <br> Defendant. | Case No. ED CV 17-01943-RAO <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Lawrence T. M. ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED, and the matter is REMANDED for further proceedings.

///

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. PROCEEDINGS BELOW

On September 23, 2013, Plaintiff protectively applied for DIB alleging disability beginning August 27, 2012. (Administrative Record ("AR") 399-400.) His application was denied initially on January 27, 2014, and upon reconsideration on May 21, 2014. (AR 304-08, 317.) Plaintiff filed a written request for hearing, and a hearing was held on February 24, 2016. (AR 323-24, 204.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 204-58.) On April 14, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from August 27, 2012 through the date of decision. (AR 32.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-7.) Plaintiff filed this action on September 25, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had engaged in substantial gainful activity from August 27, 2012, his alleged onset date ("AOD"), through his date last insured of March 31, 2014. (AR 24.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: asthma; major motor seizures; spine disorders in the lumbar and cervical spine; bilateral ulnar nerve entrapment; and affective disorder. (AR 24.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 25.)

///

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform a range of medium work as defined in 20 CFR 404.1567(c). Specifically, [Plaintiff] can lift/carry 50 pounds occasionally and 25 pounds frequently; sit for six hours out of an eight hour workday; stand/walk for six hours out of an eight hour workday; push/pull within the weight limitations; frequently climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; frequently be exposed to pulmonary irritants. [Plaintiff] is precluded from climbing ladders and scaffolds; unprotected heights; moving mechanical parts; and operating a motor vehicle. Additionally, [Plaintiff] is limited to performing simple, routine tasks; and incidental public contact.

(AR 26.)

At **step four**, based on testimony from a vocational expert, the ALJ found that Plaintiff was not able to perform his past relevant work as a truck driver. (AR 30-31.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded at **step five** that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (AR 31.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through March 31, 2014, the date last insured. (AR 32.)

## III. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts

///

and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly assessed the opinion of Dr. Ali, a treating doctor; and (2) whether the ALJ properly evaluated Plaintiff's testimony. (*See* Plaintiff's Portion of Initial Joint Stipulation ("Plaintiff's Brief") 4-19, Dkt. No. 32.) For the reasons below, the Court agrees with Plaintiff regarding the ALJ's assessment of his testimony and remands on that ground.

### A. The ALJ's Credibility Determination Is Not Supported By Substantial Evidence

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons for rejecting his subjective testimony. (*See* Plaintiff's Brief at 14-19.) The Commissioner contends that the ALJ provided legally valid reasons for rejecting Plaintiff's testimony. (*See* Defendant's Portions of Joint Stipulation "Comm'r

4

Brief") at 5-6, DKt. No. 31.)

### 1. Plaintiff's Testimony

Plaintiff testified that he has a high school degree with some college and earned his commercial driver's license. (AR 210.) Before he stopped working, he was employed as a truck driver for Pepsi Cola for 15 years and for Hughes Aircraft for five years prior to that. (AR 211-12.) He used to drive semi-diesels, scrap trucks, and car haulers. (AR 212.) He stopped working in August 2012, when he had his first seizure. (AR 211.)

Plaintiff testified regarding various physical and mental conditions he with which he struggles. He first explained that he suffers from irritable bowel syndrome (IBS) and diarrhea. (AR 214.) He was diagnosed with IBS in 2015, but stated that he has been struggling with IBS since 2011. (AR 215.) When he was a truck driver, he would experience days when he would be stuck at truck stops, incapacitated by diarrhea. (AR 214.) Plaintiff testified that he still has problems with diarrhea and experiences flare ups at least once every two weeks, with each flare up lasting two to three days. (AR 215.)

Plaintiff also testified that he has bad asthma and uses a nebulizer two to three times per day. (AR 214.) In addition, he suffers from severe headaches and gets sharp pains up the back of his head throughout the day. (AR 215.) Plaintiff described having carpal tunnel in both hands and bad pain in the back of his back. (AR 215.) He is only able to sleep three to four hours through the night. (AR 215.) The medications that he takes cause fatigue from lack of sleep. (AR 215.)

In describing his asthma, Plaintiff stated he is short-winded. (AR 217.) He described becoming exhausted quickly compared to other persons. (AR 217.) When he becomes short-winded, he takes medication, including using a nebulizer twice per day, but stated that the medication leaves him fatigued. (AR 216.)

Plaintiff also testified about the headaches that he gets. (AR 217-18.) He said that his doctors categorized them as three different types of headaches. (AR 217.)

One type is a "pressure headache" that last hours throughout the day and forces him to lay down. (AR 217.) Another type of headache consists of a sharp pain that comes up the right side of his head and hits him, but then goes away. (AR 217.) The third type Plaintiff gets "on top" of his head. (AR 218.) In terms of frequency of the headaches, Plaintiff testified that he can get them "every day and then sometimes it might not be for a couple of days." (AR 218.) Plaintiff stated that he has had the headaches for over two to three years, and takes Ibuprofen 800 for the headaches, but the medicine doesn't do much. (AR 218.) He explained that his doctor wants to send him to a neurologist to find out what is causing the headaches, but that his doctor is careful about what he prescribes for Plaintiff because of his seizures. (AR 218.)

Plaintiff also testified regarding carpal tunnel syndrome in his hands. (AR 219-20.) He stated that he gets it throughout the evening, sometimes throughout the day and described it as a "numbness." (AR 219.) His hands feel tingly and begin to cramp, sometimes waking him up if he is asleep. (AR 219.) Plaintiff takes medication for the carpal tunnel, but stated that the medicine was not "working that much." (AR 221.) Plaintiff's doctor recommended surgery, but Plaintiff said he needed to look into his finances and insurance to see how he could pay for the surgery. (AR 222.)

Plaintiff also informed the ALJ that he has rheumatoid arthritis, which causes his hands to cramp. (AR 219-20.) Plaintiff takes several medications for his rheumatoid arthritis, but the medications don't alleviate the symptoms during flare ups. (AR 219-20.)

With respect to his back, Plaintiff testified that it bothers him all the time. (AR 223.) He stated that he can't sit for very long and that walking and laying down both bother him. (AR 223.) The back pain, which runs down his right leg, wakes him up at night and sends a numb feeling down his right leg. (AR 223.) He first started having back pain in 2002, while working for Pepsi Cola. (AR 224-25.) He receives
///

injections and pain medication for his back pain. (AR 224.) The injections provide relief from the pain for two to three weeks. (AR 224.)

Plaintiff also testified regarding his seizures. (AR 224-25.) Plaintiff stated that he gets them every three to four months, sometimes five. (AR 224.) In describing a seizure, Plaintiff said he goes into convulsions and cannot respond to someone talking to him. (AR 225.) The seizures last approximately 35 to 40 seconds. (AR 225.) Plaintiff takes medication for his seizures, but described the side effects – including nausea, fatigue, and depression – as being the worst of all the medication he takes. (AR 228.)

Lastly, Plaintiff testified regarding his depression. (AR 230.) He stated that he doesn't want to see people, doesn't feel good about himself, and is not in the "right state of mind." (AR 230.) He sees a psychiatrist, who prescribes medication for him. (AR 230.)

In describing his living situation, Plaintiff said that he lives mostly with his adult cousin. (AR 209.) His cousin prepares his meals, provides transportation, and sometimes helps with medications. ((AR 231.) He is able to take care of his own personal grooming, but is not able to help with household chores because the cleaning solutions trigger his asthma. (AR 232.) He is able to do laundry and can go to the store. (AR 232.) While his cousin is at work, Plaintiff frequently stays in bed or sits in a chair. (AR 234.)

### 2. Plaintiff's Cousin's Testimony

Plaintiff's cousin also testified at the hearing, and the ALJ took into consideration her testimony in assessing Plaintiff's credibility. (AR 27-28, 242-45.) Plaintiff's cousin stated that Plaintiff resides with her, and she has daily contact with him. (AR 242.) She described for the ALJ a seizure that she witnessed a couple of months prior to the hearing – Plaintiff was sitting in a recliner watching television, when he suddenly began convulsing and shaking and became unresponsive. (AR 242-43.) The seizure lasted about 35 to 40 seconds. (AR 242.) When it ended, she

asked Plaintiff if he was okay and told him that he was not responsive while having the seizure. (AR 242.)

With respect to daily activities, Plaintiff's cousin testified that she takes care of all that needs to get done around the house. (AR 243.) She said that Plaintiff can do light cooking, like heating up food in the microwave and making cereal. (AR 243.) She transports him to his doctors' appointments and the store. (AR 244.) She also testified that she regularly calls Plaintiff when she is at work to remind him to take his medication because he can be forgetful. (AR 245.)

### 3. Plaintiff's Function Report

Plaintiff completed a Function Report in November 2013. (AR 426-34.) As part of his assessment, the ALJ considered Plaintiff's statements in this Function Report. *See* AR 27.

Plaintiff stated in the Function Report that as a result of his seizures he is no longer able to drive trucks. (AR 426.) He stated that he suffers from depression, has difficulty concentrating, experiences memory loss, difficulty sleeping, and is on a nebulizer for his asthma, which leaves him fatigued and short of breath. (AR 426.) He also listed back and neck pain and side effects from his medication as a source of injury. (AR 426.)

When describing his daily activities, Plaintiff stated that he prepares his own meals in the microwave or cooks frozen dinners once or twice per week, but that a family member does most of the cooking. (AR 428.) With respect to household chores, Plaintiff does laundry but very little cleaning. (AR 428.) He does grocery shopping with his family approximately once per week. (AR 429.) He stated that he is able to pay his bills, count change, handle a savings and checking account. (AR 429.) He no longer participates in social activities due to his depression, and has no hobbies or interests other than watching television. (AR 430-311.) He can only walk 10 to 15 minutes before needing to rest. (AR 430.)

///

Plaintiff indicated that he does not handle stress well and has difficulty remembering things. (AR 432.) He fears having a seizure and experiences suicidal thoughts. (AR 432.)

### 4. Seizure Questionnaire

Plaintiff also completed a Seizure Questionnaire in November 2013, which the ALJ considered in assessing his credibility. (AR 435-37, 27.)

Plaintiff stated in the Seizure Questionnaire that he has had seizures for one year and four months, but does not have them often. (AR 435.) When he has a seizure, he loses consciousness, has convulsions, and bites his tongue. (AR 435.) The seizures last for 30 to 50 seconds, and afterwards Plaintiff stated that he feels very tired, fatigued, confused, and sleepy. (AR 435.) It takes Plaintiff approximately one hour after having a seizure to resume normal activities. (AR 435.) He stated that the medications he takes are "good" at controlling his seizures. (AR 436.)

### 5. Third-Party Function Report

Plaintiff's ex-wife completed a Third-Party Adult Function Report in November 2013 as well, which the ALJ considered in his assessment of Plaintiff's credibility. (AR 438-47, 28.)

In her report, Plaintiff's ex-wife wrote that Plaintiff lost his career because of his seizures and depression. (AR 438.) She described his asthma as being "way out of control" and that he has back and neck aches with numbness in both arms and hands. (AR 438.) She stated that Plaintiff spends his days sleeping and watching television. (AR 439.)

With respect to his daily activities, Plaintiff's ex-wife stated that Plaintiff cooks pre-cooked meals, microwaves food, makes sandwiches or does other light cooking. (AR 440.) He does not do outdoor chores because of his asthma, and only does a little indoor work. (AR 440-41.) His family handles transporting him places. (AR 441.) He is able to shop for food, pay his bills, and handle bank accounts. (AR 441.) He no longer socializes because of his asthma and depression and mostly

watches television. (AR 442.) Plaintiff's asthma impacts his ability to walk, climb stairs, and lift things. (AR 443.) His depression affects his ability to concentrate and understand and follow instructions. (AR 443.)

### 6. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 7. Discussion

The ALJ concluded that Plaintiff's subjective allegations "are less than fully consistent with the evidence." (AR 27, 30.) The ALJ relied on the following reasons: (1) activities of daily living; and (2) lack of objective medical evidence to support the alleged severity of symptoms. (*See* AR 26-30.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Activities of Daily Living

The ALJ noted that Plaintiff admitted to performing activities within the RFC, such as "taking care of personal care unassisted, completing light household chores, going out alone, and making simple meals. He noted he was able to stay home alone

most of the day while his cousin was at work." (AR 27.) The ALJ determined that this, along with other evidence, demonstrated that Plaintiff's impairments "are less than fully consistent with the evidence."[3] (AR 27.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The fact that Plaintiff performs some daily activities does not detract from his overall credibility, as the record does not show that his daily activities consume a substantial part of Plaintiff's day. Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v.*

---

[3] The ALJ gave little to no weight to the statements of Plaintiff's cousin and ex-wife, stating that they are not medical professionals and that the "opinion of a layperson is far less persuasive" on issues concerning the severity of a claimant's symptoms or the side effects of medication than the opinion of medical professionals. (AR 28.)

11

*Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

Additionally, the ALJ observed that the Adult Function Report completed by Plaintiff stated that Plaintiff "alleged trouble with nearly all physical and mental abilities and that he could only walk 10 to 15 minutes," but he had no trouble with personal care, was able to make simple meals, do laundry, and light cleaning," and "was able to go out alone and handle financial matters." (AR 27.) It is unclear, however, whether and how such activities could be transferrable to a work setting.

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Lack of Supporting Objective Medical Evidence

The remaining reason for discounting Plaintiff's subjective testimony—lack of supporting objective evidence—cannot form the sole basis for discounting symptom testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

In sum, the ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility. Accordingly, remand is warranted on this issue.

### B. The Court Declines to Address Plaintiff's Remaining Argument

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court

need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount the credibility of Plaintiff's subjective testimony. On remand, the ALJ shall reassess Plaintiff's subjective allegations. The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

///

///

///

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 31, 2019

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**